CRAWLEY <em>v.</em> KNIGHT <em>et al.</em>

Where in a petition for leave to file information in the nature of a quo warranto the petitioner claims title to the office of mayor of an incorporated city or town by virtue of having obtained a majority of the legal votes cast at a popular election for this office, and this conclusion is founded solely upon his contention that a manager at one of the precincts opened in said election was not a freeholder, this court will not reverse the judgment of the court below, refusing the application, when the evidence on the trial clearly showed that the election-manager whose qualification for the position is thus attacked was in point of fact a freeholder.

Submitted May 18, — Decided July 20, 1899.

Petition for quo warranto. Before Judge Bennet. Ware county. March 7, 1899.

*J. L. Sweat, E. H. Myers,* and *L. A. Wilson,* for plaintiff.
*Toomer & Reynolds* and *John C. McDonald,* for defendants.

LEWIS, J.   It appears from the petition of J. L. Crawley, that on the first Saturday in January, 1899, an election was held in the city of Waycross for a mayor and five aldermen, to succeed like officers elected at the preceding annual election. A. M. Knight, the then incumbent of the office of mayor, and petitioner were candidates.   Two polling places were open, one at the court-house and the other at the opera-house, they being the two election precincts in said city.   At the opera-house precinct petitioner received 14 votes, and the other candidate for mayor received 242.   At the court-house precinct petitioner received 82 votes, and his competitor for the office 56.   After the election the managers who conducted the same at the two precincts met at the court-house in the city, for the purpose of consolidating the vote cast.   At this meeting the managers were informed that J. T. Beaton, who assisted in holding the election at the opera-house, was neither a freeholder nor an officer, and was consequently disqualified from holding an election; whereupon Beaton refused to join in the consolidation of the vote cast at the opera-house, it being decided that the election at said precinct was void because not held by three persons qualified to hold such election, as required by law. Thereupon the managers of the election held at the court-house precinct issued a certificate of election to petitioner, based upon the vote cast at that precinct alone.   After this certificate was issued, the managers of the election held at the other precinct came together at the court-house, consolidated the vote, and issued a certificate of election to Knight as mayor of the city.   Upon this Knight claimed to be elected mayor, and took the oath of office with the others who were elected aldermen.   Petitioner claimed that he, having received a majority of the legal votes cast at the election, was duly elected to the office for the ensuing term, and he prayed for leave to file information in the nature of a writ of quo warranto, as being legally entitled to the office of mayor of the City of Waycross, and by virtue of said writ to inquire into the right of Knight to said office, the duties of which he was then in fact unlawfully discharging.   A rule nisi was prayed against Knight as defendant, which was accordingly issued by

the judge, setting a time and place for the hearing. The defendant demurred to the petition, and also fully answered the same, claiming his right to the office, and especially denying that Beaton was disqualified from acting as manager at the election, alleging that Beaton, in point of fact, was a freeholder. Testimony was introduced in behalf of plaintiff by affidavits, showing that Beaton, after the polls had closed, admitted that he was not a freeholder, and that for that reason he had decided not to participate when the managers should meet to consolidate the vote. The plaintiff also introduced tax digests showing that Beaton had returned no taxes for the year preceding the election, but that certain property was given in in the name of his wife. There was also proof as to how the vote stood at each precinct, as above indicated. Evidence was introduced in behalf of the respondent, showing that the petitioner participated in the election at both precincts, and that the same was conducted fairly at both places. Beaton, whose qualification as a manager was at issue, testified that he was the owner in fee simple of about three hundred acres of land in Charlton county, and of a cemetery lot in Ware county, Georgia. He was not satisfied that the ownership of the land in Charlton county and of the cemetery lot in Ware county constituted him a freeholder, and for that reason he declined in the first instance to sign the consolidation of the vote, but in the afternoon of the day, having been advised that he was in law a freeholder, he and five of the six managers conducting the election at both precincts assembled in the county court-house, and, then and there stating the facts to said managers, he with two of them signed the consolidation and certified the election of Knight as mayor of the city. He further testified, that on December 16, 1877, he purchased for a valuable consideration a certain lot of land, giving the number, district, and county, and the number of acres, four hundred and ninety; that since that time he had disposed of one hundred and ninety acres of the land; and that the remaining three hundred and sixty acres was the property of deponent in fee simple, and had been continuously since the day of his deed. He further testified that,

after taking the deed, he through his lessees entered into possession of the land for sawmill, cross-tie, and turpentine purposes; that his wife had been the owner of certain land in Charlton county, but that in making her returns annually the property of deponent was included therein, the State and county taxes upon which had been paid with his money. The respondent also introduced in evidence a quitclaim deed from Joseph Baker to James T. Beaton, dated July 17, 1877, the consideration alleged being $50, conveying a lot of land in Charlton county, Georgia, known in the plat of said county as lot number 11 in the 1132d district, containing 490 acres of land, duly executed and recorded in Charlton county, Georgia, on February 4, 1899. To the introduction of this deed counsel for the petitioner objected on the ground that the same was void for uncertainty, in that the deed did not show in what land district the land mentioned in it was situated. This objection was overruled by the court, and the deed admitted in evidence. Title-deeds to the cemetery lot in Waycross were also introduced in evidence, and the conveyance from the Mayor and Council of Waycross to Beaton stipulated that the lot was not to be aliened by Beaton or his heirs or assigns without the consent of the mayor and council, and that it was subject to the right and power of the mayor and council to regulate the manner of interment, etc. After the evidence and the argument of counsel had closed, the judge below granted an order refusing the prayer of petitioner for leave to file information in the nature of a writ of quo warranto. To this judgment of the court the petitioner excepts; and he further assigns error upon the rulings of the court in refusing to exclude from evidence the alleged certificate of election issued to the respondent, and the deed from Baker to Beaton conveying the tract of land in Charlton county.

We have culled from the record the above, as all the material facts necessary to clearly understand and adjudicate the issues involved in this case; and the simple statement of those facts contains in itself a sufficient argument to sustain the validity and justice of the decision of the court refusing the prayer of plaintiff's petition. Manifestly, under the facts de-

veloped, the respondent was entitled to fill the office for which the plaintiff was contending. It seems that the plaintiff received less than one third of the entire vote cast at the election, and he practically bases his claim for the office solely on the ground that the election at the precinct where most of the ballots were cast was void for the reason that one of the managers was not a freeholder. The uncontradicted testimony, however, discloses the fact that he was a freeholder, which ends the controversy. Even if there were anything in the point that the nature of the deed conveying title to the cemetery lot prevented it from creating a freehold estate in the grantee, there was nothing to contradict the positive evidence that the manager of the election whose qualification was brought in question was the absolute owner of a tract of land in another county. Conceding that the objection made to the introduction in evidence of the deed conveying to him title to this land was well taken, there was no objection made to the testimony in his affidavit that in point of fact he was the owner of the land, had paid value therefor, and had been in continuous possession through his lessees under color of title for more than seven years. Granting, for the sake of the argument, that one is disqualified from holding an election when he is neither a freeholder nor an officer, and that such a disqualification renders the election void at the particular precinct where such person officiated as manager, the burden of proof to show the fact of disqualification is upon the party attacking the validity of the election; and before the court would be authorized to defeat the popular will on account of such a mistake in the selection of a manager, the testimony as to the disqualification should be clear, positive, and conclusive. In this case the testimony in behalf of the respondent overwhelmingly overcame the prima facie case presented by the plaintiff on the simple issue of fact as to whether or not this manager of the election owned such an interest in realty as to make him a freeholder.

It is unnecessary in this connection to consider the minor question raised by counsel for plaintiff in error, as to whether or not the certificate of election under which the respondent

claimed the office in question was issued properly or was in due and legal form. The main question is, does the showing made by the plaintiff indicate that he has either the legal or equitable title to the office. If the ballot at the opera-house precinct was legally cast, then it should have been counted in consolidating the vote; and, it matters not for what reason it may have been at first rejected, whether under an honest mistake of fact or law, a certificate based on such a blunder made by only one half of the entire number of managers of the election is absolutely void. The plaintiff therefore utterly failed to present such a case as to show that he was entitled to file information in the nature of a writ of quo warranto; and hence the court did not err in refusing his prayer.

Under § 4880 of the Civil Code it is provided, in effect, that upon the return of the petition for quo warranto, in case of a denial on oath by the defendant of the facts alleged in the petition, it becomes the duty of the judge to fix a time for the hearing, and draw a jury of twelve men to try the issue of facts. The petition and answer in this case did present issues of fact, particularly on the main question involved, as to whether one of the managers of the election was a freeholder. The statute does not seem to contemplate a preliminary hearing of testimony by the judge on such an issue without a jury. But no question touching the illegality of the judge's action on this account is made in this case. On the contrary both plaintiff and defendant introduced, without objection, evidence before the judge, by affidavits. In the light of this testimony, there being no material conflict in it, plaintiff's right of action became a question of law; and the court properly adjudged he was not entitled to the relief sought.

No question was made, either in this court or in the court below, as to whether or not plaintiff's exclusive remedy for the relief sought was to institute proceedings to contest the election before the ordinary, under § 111 of the Political Code; and hence that question is not decided. If such contest before the ordinary is the proper remedy, and not quo warranto, then this would be an additional reason why there was no error in refusing the prayer of petitioner.

*Judgment affirmed. All the Justices concurring.*